IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GLADYS R. STANSHAW,

        Plaintiff,                        No. CIV S-05-2049 WBS KJM

    vs.

MICHAEL J. ASTRUE,[1]                 FINDINGS & RECOMMENDATIONS
Commissioner of Social Security,

        Defendant.

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's request for a review of the Administrative Law Judge's decision that she was not without fault in accepting overpayment of benefits. For the reasons discussed below, the court recommends that plaintiff's motion for summary judgment or remand be denied and that the Commissioner's cross-motion for summary judgment be granted.

/////

/////

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security, replacing Jo Anne B. Barnhart, the original defendant herein. As provided by 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this action.

1

I. Factual and Procedural Background

Plaintiff, now eighty-two years of age, is a former employee of the United States Postal Service. She retired from that job in November 1999, at the age of 75, and soon thereafter began to receive a pension under the Civil Service Retirement System. Prior to her retirement, plaintiff filed a claim for Widow's Insurance Benefits with the Social Security Administration ("SSA").[2] However, the Administrative Law Judge ("ALJ") found no benefits were payable to plaintiff until she turned 70 because she continued to work after filing the widow's benefits claim. Administrative Transcript ("AT") 15. Plaintiff received a total of $23,782.70 in widow's benefits from her retirement in November 1999 through November 2002; after application of pension offsets, the ALJ determined this entire amount was an overpayment. AT 23-29.

Plaintiff maintains she was not at fault in causing or accepting the overpayment and is therefore entitled to a waiver of repayment. Plaintiff asserts that soon after her retirement, she contacted the Yreka Social Security office by letter and phone (leaving a voice mail message), and later went to the office in person to inquire about the effect, if any, of her pension on her Widow's Insurance Benefits. AT 31, 112-114. A representative at the Yreka Social Security office told plaintiff she was not entitled to the widow's benefits due to her pension and that the direct deposits would be stopped in about sixty days. AT 31. When the payments did not stop, plaintiff assumed that she was entitled to the benefits, believing (mistakenly) that she qualified for an exemption under the government pension offset regulations. AT 31, 114.

In April 2000, after receiving notice of plaintiff's pension from the federal Office of Personnel Management ("OPM"), the SSA attempted to contact plaintiff for confirmation and details. AT 68. The ALJ found that despite plaintiff's testimony to the contrary, plaintiff did not respond to the SSA's multiple requests for information until May 2001. AT 19, 68, 116. In that response, plaintiff maintained (incorrectly) that she qualified for an exemption under the

---

[2] Plaintiff became eligible for the widow's benefits in September 1990 and applied for them in March 1991. AT 15.

2

government pension offset rules. AT 68. Based on plaintiff's failure to provide proof or support of this position, the SSA contacted the OPM and confirmed that plaintiff was not exempt from the government pension offset requirements, that she was therefore not entitled to widow's benefits, and that she had been overpaid by $23,782.70. AT 68-69.

Accordingly, plaintiff's Widow's Insurance Benefits were stopped. AT 23. By letter dated November 5, 2002, the SSA notified plaintiff of the overpayment and requested repayment thereof. AT 23-24. By that same letter, plaintiff was advised that she could file a Request for Waiver of Overpayment Recovery ("waiver request") or a Request for Reconsideration. AT 26-28. Plaintiff filed both.[3] AT 30-36. No action was ever taken on her waiver request. However, the SSA responded to plaintiff's Request for Reconsideration with the Notice of Reconsideration on October 16, 2003. AT 67-75. In that notice, the SSA responded to and dispelled plaintiff's mistaken belief that she qualified for an exemption under the government offset pension requirements.[4] AT 68-69. On February 3, 2004, plaintiff filed a second waiver request, but no action was ever taken on it. AT 78-85. Instead, an administrative hearing was scheduled for September 1, 2004, at plaintiff's request, for review of the Notice of Reconsideration determining plaintiff had been overpaid.

At the hearing, plaintiff was represented by her granddaughter, an attorney licensed to practice law in Washington state. AT 16. The ALJ heard testimony from plaintiff regarding, among other things, her awareness that she was not entitled to the widow's benefits.

---

[3] As explained in Califano v. Yamasaki, 442 U.S. 682 (1979), there is a distinction between a request for reconsideration and a request for waiver. The request for reconsideration pertains to whether the overpayment actually occurred and was properly calculated. This kind of request involves relatively straightforward matters of computation. See 42 U.S.C. § 404(a); Califano, 442 U.S. at 695-96. The request for waiver turns on the issue of "fault" and whether recoupment or recovery would be "against equity and good conscience." 42 U.S.C. § 404(b); Califano, 442 U.S. at 696.

[4] The Notice explains that it is based on a de novo review of the facts concerning the initial determination regarding plaintiff's entitlement to benefits, and any appeal from a decision on a Request for Waiver is to be resolved by the claimant's local Social Security office. In the Notice, the SSA invites plaintiff to file another request for waiver. AT 69.

1  He issued a decision on September 24, 2004 finding that plaintiff had been overpaid, that she
2  was not without fault in causing or accepting the overpayment, and that she was therefore not
3  entitled to have recovery waived. AT 20. The Appeals Council denied plaintiff's request for
4  review on June 1, 2005. AT 7.
5  II. Standard of Review
6      The Commissioner's refusal to waive recovery of disability payments must be
7  based on proper legal standards and supported by substantial evidence. Albalos v. Sullivan, 907
8  F.2d 871, 873 (9th Cir. 1990); Harrison v. Heckler, 746 F.2d 480, 481 (9th Cir. 1984); 42 U.S.C.
9  § 405(g). The Commissioner must recover overpayments unless the recipient was
10 (1) "without fault" *and* (2) recovery would either (a) defeat the purpose of Title II of the Act or
11 (b) be against equity and good conscience. 42 U.S.C. § 404(b); see 20 C.F.R. § 404.506. Only
12 if an individual is "without fault" does the Commissioner consider whether to waive recovery.
13     The burden is on the recipient to show she is without fault. See Anderson v.
14 Sullivan, 914 F.2d 1121, 1122 (9th Cir. 1990); Harrison, 746 F.2d at 482. This court reviews the
15 Commissioner's refusal to waive repayment to determine if the proper legal standard was applied
16 and if the denial is supported by substantial evidence. Albalos, 907 F.2d at 873; Harrison, 746
17 F.2d at 481; 42 U.S.C.§ 405(g).
18 III. Analysis
19   A. Fault
20     When an overpayment occurs, the Act requires the Commissioner to recover the
21 overpayment unless the recipient was (1) without fault in receiving the overpayment, and
22 (2) recovery would either defeat the purpose of Title II of the Act or be against equity and good
23 conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506.
24     Fault is found if the recipient failed to furnish information she knew or should
25 have known to be material, or accepted a payment she either knew or could have been expected
26 to know was incorrect. 20 C.F.R. § 404.507. All the circumstances, including the recipient's

4

age, intelligence, education, and physical and mental condition must be considered. See 42 U.S.C. § 404(b); 20 C.F.R. § 404.507. Determining an individual's fault is "highly subjective, and highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of [her] situation." Albalos, 907 F.2d at 873 (citing Elliott v. Weinberger, 564 F.2d 1219, 1233 (9th Cir. 1977), aff'd in part and rev'd in part sub nom. Califano, 442 U.S. 682 (1979)). The Commissioner's finding that a recipient was at fault in receiving overpayment must be upheld if supported by substantial evidence. Albalos, 907 F.2d at 873; Anderson, 914 F.2d at 1123-24.

In the present case, the ALJ never reached the second prong of the waiver determination because he found that plaintiff was not without fault in accepting the overpayments. AT 18-19. Plaintiff argues that this decision is not supported by substantial evidence, and alternatively, that the case should be remanded so that plaintiff's waiver requests can be processed in accordance with 20 C.F.R. § 404.506.

Although the court is troubled that the SSA never processed plaintiff's waiver requests, remand to correct those procedural missteps is unnecessary. As provided by 20 C.F.R. § 404.506, when waiver is requested, the claimant gives the SSA information to support her contention that she is "without fault in causing the overpayment (see § 404.507) and that adjustment or recovery would either defeat the purpose of title II of the Act (see § 404.508) or be against equity and good conscience (see § 404.509)." The SSA reviews the information and determines whether waiver may be approved under these standards. If it cannot, a personal conference is scheduled. 20 C.F.R. § 404.506(c). The personal conference is a hearing at which the claimant is given the opportunity to appear personally (with or without an attorney), testify, cross-examine any witnesses, make arguments, and submit documents for consideration by the decisionmaker. 20 CFR § 404.506(f). A written decision then issues, and it may be appealed.[5]

---

[5] Reconsideration is then the next step in the appeals process. 20 CFR § 404.506(f).

Plaintiff's argument that her due process rights were violated by the SSA's failure to correctly process her waiver requests is unavailing.  Relying on the Supreme Court's decision in Califano v. Yamasaki, 442 U.S. 682 (1979), plaintiff argues that due process requires an initial written decision on a waiver request and, if the decision is a denial, a hearing.  But the Court in Califano merely held that an "oral hearing" is necessary before the SSA may effect recoupment (or recovery) of an overpayment.  Califano, 442 U.S. at 697.

In Califano, the Supreme Court discussed the process required when a recipient is notified that an overpayment has been made.  The recipient may request a reconsideration of that determination under section 204(a) of the Social Security Act, or she may request that repayment be waived in accordance with section 204(b).  Section 204(b) provides that there shall be no recovery from "any person who is without fault if such adjustment would defeat the purpose of (the Act) or would be against equity and good conscience."  42 U.S.C. § 404(b); Califano, 442 U.S. at 686, 693.  The Supreme Court held that no oral hearing was required for a reconsideration request under section 204(a) because it involved "relatively straightforward matters of computation for which written review is ordinarily an adequate means to correct prior mistakes."  Califano, 442 U.S. at 696.  The Court held that an oral hearing was required, however, to make a determination as to fault under section 204(b).  It commented that the fault determination "depends on an evaluation of 'all pertinent circumstances' including the recipient's 'intelligence . . . and physical and mental condition' as well as [her] good faith."  Califano, 442 U.S. at 697 (quoting 20 CFR § 404.507).

Here, although the local Social Security office did not process plaintiff's waiver requests, plaintiff was afforded a full and adequate hearing before an ALJ, who addressed in detail the issue of fault and considered the evidence previously submitted with plaintiff's waiver requests.  AT 119-128.  Plaintiff argues she had no notice that the waiver issue would be addressed by the ALJ.  This assertion is belied by the record.  At the hearing, plaintiff's representative stated on the record that she had researched the issue of waiver.  AT 128-129.  In

6

1 fact, plaintiff's representative raised the second prong of the waiver inquiry of her own accord
2 (i.e., plaintiff's individual circumstances and the hardship that would result if repayment were
3 required). AT 119-120, 129. This points to the representative's awareness and acknowledgment
4 that the bulk of the hearing up to that point had centered on the first prong of the waiver inquiry,
5 i.e., whether plaintiff was at fault in accepting the overpayment. AT 109-119. Notably,
6 plaintiff's representative made a specific request that the ALJ find that plaintiff was "without
7 fault in incurring this overpayment." AT 128-129. Even prior to the hearing, plaintiff was
8 aware that "fault" would be an important issue in determining whether the SSA would recover
9 the overpayment. Plaintiff had notice of the "fault issue" from the November 2002 letter
10 advising her of the overpayment. AT 23-29. She responded to that letter by completing a waiver
11 request form, in which she addressed her belief that she was not at fault in accepting or causing
12 the overpayment. AT 30-31. She addressed the same issue in her second waiver request,
13 completed in February 2004. AT 78-80. It is apparent from the record that she came to the
14 hearing with her representative prepared to address, and did address, the issues of waiver and
15 fault. Based on the foregoing, this court finds that the hearing before the ALJ was adequate and
16 sufficient to satisfy the requirements of Califano.

17 The court also finds that the ALJ's decision regarding fault was supported by
18 substantial evidence in the record, and that he employed the appropriate legal standards in
19 reaching that decision, as discussed below.

20 The ALJ found that plaintiff was not without fault in causing or accepting the
21 overpayment and that recovery of the overpayment was not waived. AT 20. In support of these
22 findings, the ALJ pointed to substantial evidence in the record showing that plaintiff was "aware
23 of her government pension reporting responsibilities, and its adverse effect on her Widow's
24 Insurance Benefits entitlement." AT 19. Specifically, the ALJ relied on plaintiff's testimony
25 that upon retirement on November 5, 1999, plaintiff left a voice message with the Yreka Social
26 Security office, and later sent two letters notifying SSA of her retirement and questioning

whether her pension would affect her widow's benefits. AT 18, 31, 109-110, 113. The ALJ noted that plaintiff later went to the Yreka Social Security office in person because she was still unsure about the impact of her pension on her benefits. AT 18, 31, 113. Importantly, plaintiff admits that a representative from that office told her she was not entitled to the widow's benefits, that they would be terminated, and that "everything would be corrected in about 60 days." AT 18, 31, 113. Afterwards, plaintiff testified that she continued to receive the widow's benefit payments, and just assumed that the SSA had decided she was entitled to them after all.[6] AT 18, 113-114.

Following this, plaintiff did not contact or return to the Yreka Social Security office to inquire as to why she was still receiving the payments. In April 2000, after receiving notice from the OPM of plaintiff's civil service pension, the SSA contacted plaintiff for details and confirmation of that pension. AT 68. According to SSA records, multiple requests for information were sent to plaintiff, but she did not respond until May 2001. AT 68. In her response, plaintiff (wrongly) contended that she qualified for an exemption from the government pension offset requirements. AT 68-69. The ALJ found that this correspondence to and from the SSA showed that plaintiff was "again put on notice that any exemption and her Widow's Insurance benefits entitlement was in question." AT 19.

Given plaintiff's awareness of the SSA's position that she was not entitled to the benefits, and her failure to take action after she continued to receive them, the ALJ found that plaintiff "failed to exercise a high degree of care in determining whether circumstances . . . warranted further inquiry and cooperation with the Administration." AT 19; see 20 C.F.R. § 404.511(a) ("An individual *will not be without fault* if the Administration has evidence in its

---

[6] The record shows that plaintiff believed she was eligible to receive retirement benefits in 1979, and as a result thereof, qualified for an exception to the government pension offset provisions. AT 17, 31, 56. Regardless of this mistaken belief, plaintiff had notice of the SSA's position that she was not entitled to widow's benefits when she visited the Yreka Social Security office in 1999.

8

1 possession which shows either a lack of good faith or failure to exercise a high degree of care in
2 determining whether circumstances which may cause deductions from [her] benefits should be
3 brought to the attention of the Administration by an immediate report or by return of a benefit
4 check." (emphasis added)).

5       The ALJ considered plaintiff's age, her remote rural residence, the fact that she
6 relies on others for transportation[7] and her overall financial circumstances.  AT 17-20.  Having
7 done so, the ALJ found that her failure to "follow up in writing, by telephone, or [. . .] in person
8 [. . .] when she [was in] town for groceries with her son," did not constitute the requisite "high
9 degree of care." AT 19.  The record demonstrates that plaintiff was not only aware of her
10 obligation to report her pension – as evidenced by her early efforts to contact the Yreka Social
11 Security Office – she also was aware of the pension's potential effect on her widow's benefits.
12 Plaintiff admits being told by a representative at the Yreka office that she was not entitled to
13 those benefits and that they would be terminated.  Plaintiff thereafter did not follow up with the
14 SSA after she continued to receive the benefits after expiration of the termination period she had
15 been given.  This evidence is substantial and supports the ALJ's finding that plaintiff was at fault
16 in accepting benefits she "knew or could have been expected to know" were incorrect.  See 20
17 C.F.R. § 404.507.

18     B. Remand

19       Plaintiff requests that the local Social Security office be ordered to review the
20 waiver requests, issue a written decision thereon, and if appropriate, schedule a personal
21 conference.  That process would require a determination as to plaintiff's fault based on the same
22 standards applied by the ALJ.  Because the ALJ has already adequately addressed fault, both at
23 the hearing and in his opinion, and because his determination on that issue is supported by
24 substantial evidence, remand would be futile.

25
26     [7] Plaintiff is legally blind.  AT 22.

9

IV. Conclusion

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment be denied; and

2. The Commissioner's cross-motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 23, 2007.

_____
U.S. MAGISTRATE JUDGE

MB
stanshaw.ss

10